

**IT IS ORDERED as set forth below:**


**Date: November 13, 2017**

_Mary Grace Diehl_

_____

**Mary Grace Diehl**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| In re: | CASE NUMBER: |
| **NECHANTA DENISE ALEXANDER**, | **17-63938-MGD** |
| Debtor. | CHAPTER 13 |

## MEMORANDUM OPINION AND ORDER OVERRULING
## OBJECTION TO CONFIRMATION FILED BY WCR PROJECT, LLC[1]

The above-captioned case came before the Court on October 18, 2017 (the "Hearing") for

confirmation of a Chapter 13 plan of reorganization (the "Plan") proposed by the Debtor. (Docket

No. 14).[2]   An objection to the Plan was filed by WCR Project, LLC ("WCR Project") on October

11, 2017 (the "Objection").   (Docket No. 12).   At the Hearing, the Debtor and counsel for the

---

[1] This Order constitutes findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure
7052 and 9014.  Where appropriate in this Order, findings of fact shall be construed as conclusions of law and
conclusions of law shall be construed as findings of fact.

[2] A prior version of the Debtor's plan was filed on August 8, 2017.   (Docket No. 3).   Both of the plans are extension
plans that pay all creditors in full.

Debtor appeared in support of confirmation of the Plan and counsel for WCR Project appeared in opposition.  Counsel for the chapter 13 trustee (the "Trustee") also appeared at the Hearing and did not express a position in relation to treatment of WCR Project's potential claim.

WCR Project asserts that it is the owner of real property located at 97 Delmoor Drive, Atlanta, Georgia (the "Property"), by virtue of a tax sale conducted on or around March 3, 2009. Through her Plan, the Debtor seeks, among other things, to redeem the Property.  WCR Project further asserts that the Debtor cannot redeem property sold at a tax sale through a Chapter 13 plan. This Court holds that the Debtor can redeem the Property through the Plan, and will overrule WCR Project's Objection for the reasons outlined below.

## FACTS[3]

Based on unpaid *ad valorum* property taxes on the Property, the Fulton County Tax Commissioner levied and sold the Property at a tax sale conducted by the Sheriff of Fulton County on or around March 3, 2009 for $2,576.75 (the "Tax Sale").[4]  The Objection at *1, ¶ 1.  At the Tax Sale, the Property was purchased by Heartwood 16, LLC.  The Objection at *1, ¶ 1. Subsequent to purchasing the Property, Heartwood 16, LLC conveyed the Property to Georgia Asset Resolution Group, LLC via quit claim deed dated July 16, 2012.  *See* the Objection at *1, ¶ 1, and *6.  The Georgia Asset Resolution Group, LLC then conveyed the Property to WCR Project via quit claim deed dated April 7, 2017.  *See* the Objection at *1, ¶ 1, and *7.  WCR

---

[3] Some of the facts were stipulated to or adduced from testimony at the Hearing; and others, as indicated, are from the Objection.

[4] In a recently filed *Objection to Claim of WCR Project, LLC, Claim No. 2-1*, filed October 31, 2017 (Docket No. 18), the Debtor is challenging the validity of the tax sale, but that objection and argument is not currently ripe and so will not be addressed by this Order.

Project asserts that it served notice (the "Barment Notice") on the Debtor and the other parties required to receive that notice by O.C.G.A. § 48-4-45.   The Objection at *1-2, ¶ 3.   The Barment Notice stated that the recipients had until September 1, 2017 (the "Redemption Deadline") to redeem the Property pursuant to O.C.G.A. § 48-4-40.   The Objection at *1-2, ¶ 3.

The Debtor filed this case on August 8, 2017 (the "Petition Date") under chapter 13 of title 11 of the United States Code (the "Bankruptcy Code").   (Docket No. 1).   On the same day, the Debtor filed the first version of the Plan, exercising the right to redeem the Property and proposing to pay all of her debts (including the redemption amount) in full.   (Docket No. 3).   Prior to WCR Project filing a proof of claim, the Debtor estimated the redemption amount as $1,600, but had indicated that this is an extension plan, paying all debts in full.

On August 31, 2017, prior to filing the Objection, WCR Project filed a proof of claim, listing the amount of the claim as $5,189.50, categorized as secured by the Property.   (Proof of Claim No. 2-1).   Although, per the Barment Notice, the period to pay the redemption amount would have expired on September 1, 2017, because the Debtor filed for bankruptcy prior to that date, at a minimum, 11 U.S.C. § 108(b)[5] extended that deadline to the 60th day following the order for relief, to and including October 9, 2017.   The Objection at *2, ¶ 4.   The Debtor's meeting of creditors required by § 341 was held and concluded on September 21, 2017.   On September 28, 2017, the Trustee filed an *Objection to Confirmation*.   (Docket No. 10).   On October 13, 2017, the Debtor filed the current version of the Plan, adjusting the amount listed to be paid to WCR Project from $1,600, to $5,189.50 to match WCR Project's filed claim.   The Hearing was held on

---

[5] Unless otherwise specified, all statutory provisions cited herein are found within title 11 of the United States Code (11 U.S.C.).

3

October 18, 2017.  On October 24, 2017, the Debtor filed the *Brief in Support of Debtor* (the "Debtor's Brief").  (Docket No. 17).  Given that WCR Project filed a proof of claim in the amount below, the Court finds that the redemption amount as of the Petition Date was $5,189.50 (the "Redemption Amount").

### DISCUSSION[6]

The issue before the Court is whether the Debtor can pay the Redemption Amount to WCR Project over the five-year applicable commitment period ("ACP") of her Plan.[7]  Central to this question is whether WCR Project has a "claim" as used in the Bankruptcy Code, and, if so, can that claim can be modified by § 1322(b)(2) to allow the Debtor to pay the Redemption Amount over the applicable commitment period of her Plan.   In support of her position, at the Hearing and in the Debtor's Brief, the Debtor cited to, *inter alia*, *In re Jimerson*,[8] and *Frances v. Scorpion Group, LLC (In re Francis)*.[9]  In opposition, in the Objection and at the Hearing, WCR Project cited to, *inter alia*, *In re Edwards*,[10] and *Callaway v. Harvest Assets, LLC (In re Callaway)*.[11] Based on a

---

[6] This Court has jurisdiction over this matter under 28 U.S.C. § 1334.   Venue is proper in this Court under 28 U.S.C. § 1409.   This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

[7] WCR Project has not argued that the Debtor lost her rights in the Property when she failed to pay the Redemption Amount in full by September 1, 2017.   Rather, WCR Project argued that §108(b) extends the redemption period by sixty (60) days from the Petition Date, such that the Debtor lost her rights in the Property when she failed to pay the Redemption Amount in full by October 9, 2017.

[8] 564 B.R. 430, 435-36 (Bankr. N.D.Ga. 2017)(Baisier, J.), currently under appeal to the U.S. District Court, Northern District of Georgia, at *Deed Co, LLC v. Jimerson*, Case No. 1:17-cv-00513-WSD (Duffy, J.).   Despite *Jimerson* being under appeal, this Court agrees with the analysis set forth therein, as is discussed below.

[9] 489 B.R. 262, 266 (Bankr. N.D.Ga. 2013)(Hagenau, J.).

[10] Bankr. Case No. 14-51366-CRM, Docket No. 35 (Bankr. N.D. Ga. Nov. 13, 2014) (Mullins, C.J.).

[11] Bankr. Case No. 14-64446-CRM, Docket No. 36 (Bankr. N.D. Ga. Feb. 6, 2015) (Mullins, C.J.), *aff'd* Case No. 1:15-cv-00570-ODE (N.D.Ga. Oct. 30, 2015) (Evans, J.).   WCR Project also cited to *First American Title Lending v. Holt (In re Holt)*, Bankr. Case No. 16-12150-WHD, 2017 WL 781222, 2017 Bankr. LEXIS 601 (Bankr. N.D.Ga. Mar.

4

review of the law in this matter and the arguments made by the parties, this Court holds that the Debtor can pay the Redemption Amount over the ACP of her Plan and therefore overrules the Objection of WCR Project.

### GEORGIA TAX SALE LAW

Real property taxes in Georgia are assessed as of January 1 of each year, and the property owner is responsible for "returning" it as of that date.   O.C.G.A. § 48-5-10.   "[L]iens for all taxes due the state or any county or municipality in the state shall arise as of the time the taxes become due and unpaid and all tax liens shall cover all property in which the taxpayer has any interest from the date the lien arises until such taxes are paid."   O.C.G.A. § 48-2-56(a).

If the taxes are not paid timely, the tax commissioner may issue an execution to the sheriff to levy upon the property of the taxpayer, after notice to the property owner.   O.C.G.A. § 48-1-3 *et seq.*   Once the property is sold at such a tax sale, O.C.G.A. § 48-4-40 provides

> Whenever any real property is sold under or by virtue of an execution [*fi fa*] issued for the collection of state, county, municipal, or school taxes or for special assessments, the defendant in *fi. fa.* or any person having any right, title, or interest in, or lien upon such property may redeem the property from the sale by the payment of the amount required for redemption, as fixed and provided in Code Section 48-4-42:
>
> (1) at any time within 12 months from the date of the sale; and
>
> (2) At any time after the sale until the right to redeem is foreclosed by the giving of the notice provided for in Code Section 48-4-45.

O.C.G.A. § 48-4-40 (the right to redeem under this section, the "Right of Redemption"). O.C.G.A. § 48-4-40 provides that any party with an interest in the property may redeem the

---

6, 2017) (Drake, J.), but that case involved a redemption of a title pawn on a car and is inapposite here.

property at any time until after the notice required by O.C.G.A. §§ 48-4-40 & 48-4-45, and the time required therein has expired (the "Redemption Deadline").

Per the Objection, the Barment Notice provided that the Right of Redemption expired on September 1, 2017.  The Objection at *1-2, ¶ 3.  The Debtor filed for bankruptcy prior to September 1, 2017, on August 8, 2017.  Docket No. 1.  Therefore, at a minimum, the Debtor possessed a Right of Redemption on the Petition Date.  Despite WCR Project's assertion that the only right possessed by the Debtor after the Tax Sale was the Right of Redemption, however, the Debtor also possessed other significant rights, which became property of the estate when the Debtor filed this petition.  As is set forth below, although a tax sale purchaser acquires title to the subject property at the tax sale, until the Right of Redemption has been properly foreclosed, the former property owner still retains all rights to the property except for legal title.

### PROPERTY OF THE ESTATE

The Bankruptcy Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a).  WCR Projects asserts that the Debtor is incorrect in asserting that she owns the Property, because WCR Project obtained legal title to the Property indirectly from the purchaser at the Tax Sale.  The Objection at *1, ¶ 1.  But, there are other factors to consider in determining property of the estate beyond legal title.  *Jimerson*, 564 B.R. at 435-36 (citing *Scorpion*, 489 B.R. at 266).  Aside from legal title and the Right of Redemption, there are other rights possessed by the "former owner" including, *inter alia*, the rights of possession, use, profits, and the ability to exclude others.  *Jimerson*, 564 B.R. at 436 (citing *Scorpion*, 489 B.R. at 266-67).  This is very similar to a deed to secure debt in Georgia, under which a mortgagor holds legal title, but the borrower otherwise possesses and

retains all other rights to the property. *Scorpion*, 489 B.R. at 266 (citing *Brown Inv. Group, LLC v. Mayor & Alderman of City of Savannah*, 289 Ga. 67, 68, 709 S.E.2d 201 (2011)).   In cases with a deed to secure debt, there is no doubt that the subject property is property of the estate, even in spite of the debtor not holding legal title.   *Jimerson*, 564 B.R. at 435-36; *Scorpion*, 489 B.R. at 266 (citing *Citizens' S. Bank v. Realty Sav. & Trust Co.*, 167 Ga. 170, 144 S.E. 893 (1928)).   This is equally true in the context of a tax sale redemption prior to the expiration of the Right of Redemption.   *Jimerson*, 564 B.R. at 435-36; *Scorpion*, 489 B.R. at 266.   It does not make a practical difference that a tax sale purchaser's rights are created by statute and a mortgagor's rights by contract.   *Scorpion*, 489 B.R. at 266-67.

> The tax sale purchaser only holds an inchoate title to such property. . . . Like a lender, a tax [sale] purchaser's title is subject to divestment if the delinquent taxpayer pays a certain amount, and until that right of redemption expires, the delinquent taxpayer retains all the remaining rights in the "bundle of rights," including, *inter alia*, the right to possession, use, and proceeds.

*Jimerson*, 564 B.R. at 436 (citing *Scorpion*, 489 B.R. at 266-67).

It is these other rights in the "bundle" that are retained by the Debtor that distinguish this case (and *Jimerson* and *Scorpion*) from *Commercial Fed. Mortg. Corp. v. Smith (In re Smith)*.[12]  Under Alabama law, a debtor is required to surrender possession and all the other rights in the "bundle" to preserve the Alabama right of redemption, in the context of a mortgage foreclosure.  *Smith*, 85 F.3d at 1557 (citing Ala. Code § 6-5-251 (1993)).   Therefore, the only right retained by that debtor was a right of redemption.   By contrast, owners of properties sold at tax sales in Alabama retain the "bundle of rights" similar to those in Georgia.   *Compare with In re Ferrouillat*, 558 B.R. 938, 942-43 (Bankr. S.D. Ala. 2016) (holding that subsequent to a tax sale,

---

[12]  85 F.3d 1555 (11th Cir. 1996).

the former property owner retained all rights in the property other than legal title and therefore those rights became property of the estate.).

WCR Project argues that, because it holds legal title and because the Debtor did not pay the Redemption Amount in full prior to the final date set forth in the barment notice (extended by 60 days by § 108(b)), the Property is fully vested in WCR Project, and therefore the Property is not property of the estate.   Like WCR's arguments, the courts in *Edward* and *Callaway* also only recognized the Right of Redemption as being possessed by the debtor; neither case addressed the other rights that were retained by the debtor on each's petition date.   *See Edwards*, at \*5-7 ("The sale divested the Debtor of title to the Property, leaving Debtor with a right to redeem property"); *Callaway*, at \*11 ("First, Appellant had only a right to redemption in the Property at the time that he filed for bankruptcy, as title to the Property had passed when the [tax sale purchaser] purchased the tax deed.").   Neither WCR nor the courts in *Edwards* or *Callaway* gave any explanation for this absence.   *See Edwards* (*passim*); *Callaway* (*passim*); Doc. 12 (*passim*).   As discussed above, however, these other rights in the "bundle" possessed by the Debtor on the Petition Date are crucial to the analysis.   Just like a borrower under a deed to secure debt, on the Petition Date, the Debtor in this case possessed all the rights to the property except legal title.   In light of the foregoing, this Court finds that the Property is property of this Debtor's Chapter 13 estate.

### WCR PROJECT HAS A CLAIM

Courts in this District are also split as to whether a debtor who files a Chapter 13 bankruptcy case between the delivery of a barment notice under by O.C.G.A. § 48-4-45 and the deadline for redemption arising from that barment notice can pay the redemption amount over time pursuant to a Chapter 13 plan, or whether instead the debtor must pay the redemption amount in

full by a date that is no later than sixty (60) days[13] after the filing date of the bankruptcy case.[14]    In

all the cases previously addressed by this Court, the tax sale purchaser either did not file a claim or,

in the case of *Jimerson*, waited until after the order allowing the debtor to redeem the property over

the course of the plan before filing a proof of claim.    The instant case is distinguishable, because

prior to even filing the Objection, WCR Project filed a proof of claim, categorizing the debt owed

to them as secured by the Property.    Since proofs of claim are prima facie evidence of a debt, filed

under penalty of perjury, this Court finds that WCR Project has admitted on the record that it

possesses a secured claim in the above-captioned bankruptcy case.

Even if WCR Project had not filed a proof of claim, this Court agrees with the holdings in

*Jimerson* and *Scorpion*, and would still have found that WCR Project has a secured claim for the

purposes of the Bankruptcy Code and chapter 13.

The Bankruptcy Code defines a claim as:

---

[13]  Based on §108(b).

[14]  It is undisputed that a debtor has no rights in a property sold at a tax sale if the redemption period expired prior to the
debtor filing for bankruptcy.    *Jimerson*, 564 B.R. at 434 n. 14 (citing *Georgia Lien Services, Inc. v. Barrett*, 272
Ga.App. 656, 658, 613 S.E.2d 180, 183-83 (Ga. App. 2003); *Boroughs v. Lance*, 213 Ga. 143, 144, 97 S.E.2d 357, 358
(1957); *Metro Inv. Partners v. Baker (In re Baker)*, Bankr. Case No. 08-83693, Docket No. 33, 2009 Bankr. LEXIS
5738, at \*5-6 (Bankr. N.D.Ga. Feb. 23, 2009) (Massey, J.); *Moore v. Complete Cash Holdings, LLC (In re Moore)*,
448 B.R 93 (Bankr. N.D.Ga. 2011)(Bonapfel, J.).

> Conversely, if the barment notice has not been served when the bankruptcy case is commenced, a
> debtor almost certainly has the ability to exercise the redemption right by making payments over
> time in a Chapter 13 plan, since in those circumstances (i) there is no alleged conflict between 11
> U.S.C. § 108 and 11 U.S.C. § 1322 (*see infra*), (ii) the right to redeem does not simply expire
> through the passage of time (*see* O.C.G.A. § 48-4-40)(requiring the sending of the barment notice
> and the expiration of a statutory time period to terminate the right) and (iii) the sending of the
> barment notice after the bankruptcy filing is prohibited by the automatic stay and may in appropriate
> circumstances remain stayed, such that the right never expires under state law.

*Jimerson*, 564 B.R. at 434, n. 14 (citing *Greyfield Resources, Inc. v. Drummer and Goodman (In re
Drummer)*, 457 B.R. 912 (Bankr. N.D.Ga. 2011)(Sacca, J.)).

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). Additionally, "claim" is to be interpreted broadly. *See Pa. Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990); *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); *Jimerson*, 564 B.R. at 437; *Scorpion*, 489 B.R. at 267-68. The analysis and facts in *Johnson* are most applicable here.

*Johnson* involved a chapter 13 debtor that owned property subject to a mortgage; however, the debtor's personal liability was discharged in a previous Chapter 7 case. *Johnson*, 501 U.S. at 80. Therefore, the debt was non-recourse. *Id.* at 83. Despite the argument that a non-recourse loan claimant has no right to payment as referred to in § 101(5), the Supreme Court held first that the right to proceeds from the sale of the property is a "right to payment" and, second that § 101(5)(B) also includes equitable remedies, such as the right to foreclose. *Id.* at 84. The courts in *Jimerson*, *Scorpion*, and several other cases following *Johnson*, have likewise found that the interest possessed by a non-recourse mortgagee is almost identical to the interest that a tax sale purchaser possesses. *Jimerson*, 564 B.R. at 437-38 (collecting cases). Therefore, like in *Johnson* and *Jimerson*, WCR Project holds a "claim" as defined in the Bankruptcy Code.[15]

---

[15] Unlike *Jimerson*, *Scorpion*, and other cases, because the court in *Callaway* started with the proposition that the only right held by the debtor was the right of redemption and therefore the property was not property of the estate, the only obligation of any party in connection with the subject property was the tax sale purchaser's obligation to return title if the redemption amount was paid timely. *Callaway*, at *12. Because that was the only obligation the court recognized, it held that there was no claim as defined in the Bankruptcy Code. *Id.* Likewise, though never explicitly stated as such in *Edwards*, the conclusion in that case seems to imply that the tax sale purchaser did not have a claim

In the instant case, WCR filed a proof of claim categorizing the debt as a secured debt, and further, the Debtor has an obligation to pay the Redemption Amount to WCR Project or forfeit all of her remaining rights to the Property, thus establishing a claim secured by a lien.   *See Scorpion*, 489 B.R. 269 (quoting the definition of lien in § 101(37)).   Pursuant to § 506(a), a claim is a secured claim if the property securing the lien has a value equal to or greater than the related debt. WCR Project has a claim for the Redemption Amount of approximately $5,189.50.   The only other claim potentially secured by the Property is $4,374.83.[16]   The Debtor scheduled the value of the Property as $12,000.   Consequently, the value of the Property is equal to or exceeds the value of all claims secured by it, and WCR Project holds a fully secured claim in this case.

This Court agrees with the analysis set forth in *Jimerson* and *Scorpion*.   The Property is property of the estate; WCR Project holds a claim in this case secured by the Property; and, as set forth below, that secured claim can be modified pursuant to § 1322(b).

### WCR PROJECT'S SECURED CLAIM CAN BE MODIFIED PURSUANT TO 11 U.S.C. § 1322(b)

Having determined that the Property is property of the estate and that WCR Project has a secured claim, the Court now turns to the treatment of that claim.   Generally, a secured claim can be modified pursuant to § 1322(b), unless the claim is secured by the principal residence of the Debtor.   *See Scorpion*, 489 B.R. at 269.   As regarding tax redemptions, however, some courts have held that § 108(b) provides the only extension of time associated with redemption, while

---

that could be treated.   *See Edwards* at *11-15 (*passim*).

[16] Other than WCR Project's claim to the Property, the Property appears to be encumbered by a lien listed on the Debtor's Schedule D for other unpaid taxes in favor of the Fulton County Tax Commissioner (*But see* Claim No. 4 in the amount of $4,374.83 and categorized as priority unsecured).   The Plan proposes to pay the Fulton County Tax Commissioner a total of $4,500.   The Fulton County Tax Commissioner has not objected to the confirmation of the Plan.

other courts have held that § 1322(b) can be used to permit the redemption amount to be paid over time, like any other claim, and is not foreclosed by § 108. *See Jimerson*, 564 B.R. at 438 (comparing cases). This Court holds that § 1322(b)(2) allows a debtor to pay a tax redemption amount over the course of that chapter 13 plan based on the analysis set forth below, and therefore, the Debtor may pay WCR Project's claim over the Debtor's Plan.

Section 1322(b)(2) provides that a debtor may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2). As set forth above, WCR Project possesses a claim secured by a lien (in the form of a conditional title) on the Property. The Debtor does not reside in the Property, and therefore it is not her principal residence, as used in § 1322(b)(2). Consequently, WCR Project's claim can be modified under § 1322(b)(2) unless the application of § 1322(b)(2) is foreclosed by § 108(b).

The courts that have precluded the application of § 1322(b), such as *Callaway* and *Edwards*, held that only § 108(b) could extend the redemption period, limited to sixty (60) days from the petition date. *Callaway*, at *11-12; *Edwards*, at *14. They held that property rights granted by state law can only be modified to the extent the Bankruptcy Code explicitly allows, such as by § 108(b), and the right of redemption is granted by state law. *Callaway*, at *12; *Edwards*, at *11-13. Those courts reasoned that once the sixty-day extension has passed, the debtor's rights were automatically forfeit, and therefore there is no claim left for § 1322 to treat. *See, e.g.*, *Edwards*, at *11 (citing *Smith*, 85 F.3d at 1560). Therefore, any extension beyond that which § 108(b) provides would impermissibly expand that state-law determined right. *Edwards*,

at *13-14 ("To enlarge the redemption period would enlarge a debtor's property rights beyond those specifically set forth by state law and by Congress under section 108(b).") (citing *The Fed. Land Bank of Louisville v. Glenn (In re Glenn)*, 760 F.2d 1428, 1441 (6th Cir. 1985); *Johnson v. First Nat'l Bank of Montevideo Minn.*, 719 F.2d 270, 274 (8th Cir. 1983)).   Those courts also held that a tax sale purchaser does not have a claim as used in the Bankruptcy Code.[17]

In contrast to those cases, the courts in *Jimerson* and *Scorpion* held that the tax sale purchaser held a secured claim.   *Jimerson*, 564 B.R. at 438; *Scorpion*, 489 B.R. at 269.   In that context, those courts compared §§ 108 and 1322, and held that although § 108(b) was an expansion of state law rights by Congress, it was not intended to limit the applicability of any other provision of the Bankruptcy Code.   *Scorpion*, 489 B.R. at 269 (citing *In re Bates*, 270 B.R. 455, 466 (Bankr. N.D. Ill. 2001)); *see also Pittman*, 549 B.R. 614, 629-30 (Bankr. E.D.Pa. 2016).

To prevent an irreconcilable conflict, the canons of statutory interpretation posit that two statutes should be interpreted in a way that avoids that conflict.   *See Johnson v. Midland Funding*, 823 F.3d 1334, 1340 (11th Cir. 2016) (citing *J.E.M. Ag. Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 143-44, 122 S.Ct. 593, 605, 151 L.Ed.2d 508 (2001); *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1331 (11th Cir. 2014) (citing *Morton v. Mancari*, 417 U.S. 535, 550-51, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); *Pittman*, 549 B.R. at 629).   If conflict is unavoidable, as a general principle, a specific-application statute should control over a general-application one.   *Gilbert v. U.S.*, 640 F.3d 1293, 1308 (11th Cir. 2011) (citing *Morton*,

---

[17] *Edwards* is also distinguishable because the debtor was not proposing payment in full to the tax sale purchaser. *Edwards*, at *2.   The debtor's plan proposed paying $4,000 to redeem the property, but the property was sold at the tax sale for $15,500.   *Id.*   Thus, this did not meet the requirements of O.C.G.A. § 48-4-40.   Therefore, this Court agrees that this is not a permissible way to exercise the Right of Redemption.

417 U.S. at 550-51).   This applies to the Bankruptcy Code as much as any title.   *In re Cox*, 338 F.3d 1238, 1243 (11th Cir. 2003) (citing *Morton*, 417 U.S. at 550-51; *see also Pittman*, 549 B.R. at 629 (citing *Bank of Commonwealth v. Bevan*, 13 B.R. 989, 994 (E.D. Mich. 1981) (citing *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962))).   As between §§ 108(b) and 1322(b)(2), § 1322(b)(2) has more specific application and should govern over § 108(b), but there is also a way to interpret these statutes to avoid any conflict entirely.

As stated above, if two statutes conflict, the general rule of statutory construction provides that the specific governs over the general.   *Gilbert*, 640 at 1308 (11th Cir. 2011) (citing *Morton*, 417 U.S. at 550-51); *Cox*, 338 F.3d at 1243 (citing *Morton*, 417 U.S. at 550-51); *In re Frazer*, 377 B.R. 621, 632 (9th Cir. B.A.P. 2007) (citing *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704 (1932)); see also *Dubov v. Read (In re Read)*, 692 F.3d 1185 (11th Cir. 2014).   Section 1322(b)(2) does not apply to all bankruptcy cases, it specifically only applies to those cases that are filed under chapter 13 of the Bankruptcy Code.   *Jimerson*, 564 B.R. at 440-41.   By contrast, § 108(b) is a general-application provision of the Bankruptcy Code, applying to all bankruptcy cases, including chapter 13, but also including cases filed under chapters 7, 11, 12, and 15.   *Id.*; *See* 11 U.S.C. § 103; *compare* 11 U.S.C. § 108 *with* 11 U.S.C. § 1322.   Therefore, to the extent that there is a conflict between the two statutes, since § 108 is a general-application provision, and § 1322 is a specific-application provision, § 1322 is controlling over § 108.   *Pittman*, 549 B.R. at 629; *Scorpion*, 489 B.R. at 270; *In re McKinney*, 341 B.R. 892, 901-02 (Bankr. C.D. Ill. 2006).

Additionally, § 108(b) was added to the Bankruptcy Code in 1978, based on a predecessor section, Section 11(e), that was added in 1938.   *See McKinney*, 341 B.R. at 899.   Section 108(b),

and its predecessor, were intended to provide the trustee or similarly situated party a brief extension to preserve any asset for the estate that might otherwise be lost under applicable non-bankruptcy law.[18]   *Id.*; *see also* 2 COLLIERS ON BANKRUPTCY ¶ 108.03 (Alan N. Resnick & Henry J. Sommer, 16th ed.).   It is an expansion of a deadline of a non-bankruptcy right, but it should not affect any other rights the Bankruptcy Code.   2 COLLIER ON BANKRUPTCY ¶ 108.03[3]; *Moody v. Amoco Oil Co.*, 734 F.2d 1200 (7th Cir. 1984) (holding that § 108(b) did not affect the rights granted to a debtor under § 365); *Frazer*, 377 B.R. at 632; *Scorpion*, 489 B.R. at 269-70; *Bates*, 270 B.R. at 466.

Having found that WCR Project has a claim secured by property that is not the Debtor's principal residence, § 1322(b) applies.   Section 1322 controls over § 108, and the Debtor can thus modify WCR Project's rights to the extent that the Redemption Amount can paid in full, with interest, over the term of the Debtor's Plan.

Alternatively, §§ 108 and 1322 are not actually in conflict in this case.   The Debtor argues that she has effectively exercised her Right of Redemption by proposing a Chapter 13 plan prior to the expiration of § 108(b)'s sixty-day period that proposes to pay the redemption amount in full,[19]

---

[18] For example, chapter 7 does not provide the option to a debtor to pay debts over time, unlike chapter 13.   *See* 11 U.S.C. § 701, *et seq.*   In that context, § 108(b) provides a chapter 7 trustee an additional sixty (60) days that it would not otherwise have to exercise that redemption.   *See McKinney*, 341 B.R. at 901-02.

[19] One of the arguments raised by WCR Project at the Hearing is that the original plan filed by the Debtor, although marked as paying all debts in full, had not correctly estimated the claim of WCR Project, only proposing to pay $1,600 (*See* Docket No. 3), and that the Debtor's amended plan was not filed until October 3, 2017, after the 60-day extension of § 108(b) expired on October 9, 2017.   However, as Debtor argues in Debtor's Brief, prior to the filing of a claim by a creditor, it is not unusual for a debtor to underestimate the amount of a claim; further, the plan filed by the Debtor explicitly states that "an allowed proof of claim will be controlling, unless the Court orders otherwise." Docket No. 3, at *1, ¶ 3.   The Court does not find that the Debtor's underestimation of the claim changes the analysis in this Order, because (1) WCR Project did not file their claim until after the Debtor had filed this original draft of the plan; (2) the Debtor had marked the box designating the plan as an extension plan (paying all debts back in full), as opposed to a composition plan (paying debts back in less than the full amount); and (3) the Debtor has since amended

albeit over time pursuant to § 1322.   That exercise takes § 108 out of the equation.   As support

for that proposition, *Jimerson* cited to *Pittman*.

> Under Pennsylvania law (applicable in *Pittman*), like Georgia law (applicable
> here), a tax sale purchaser has an inchoate, defeasible title to the subject property.
> Prior to the expiration of the *original* redemption period, the debtor filed for
> bankruptcy and proposed a plan that would pay the redemption amount in full with
> interest to account for payment over time.   Simply proposing a plan to pay the
> redemption amount in full was an exercise of the right of redemption and did not
> require any additional steps, including a lump sum payment.

*Jimerson*, 564 B.R. at 440 (citing *Pittman*, 549 B.R. at 617-18, 22, & 30-31).

It is a well-established principle that the Bankruptcy Code supersedes state law.   *Pittman*,

at 629-30 (citing *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 162–63, 67

S.Ct. 237, 91 L.Ed. 162 (1946)).   Although the applicable state law might require a lump-sum

payment, chapter 13 of the Bankruptcy Code allows a debtor to pay debts over time, superseding

state law.   *Jimerson*, 564 B.R. at 440; *see Scorpion*, 489 B.R. at 269-70 (citing *Bates*, 270 B.R. at

466).   Other than complying with Chapter 13, no action other than filing a plan proposing to pay

the redemption amount is required.   *Jimerson*, 564 B.R. at 440 (citing *Pittman*, 549 B.R. at

630-31 (holding that Fed. R. Bankr. P. 6008 only applies to Chapter 7 and that § 108 does not

require any specific action)).   Based on cases setting forth similar reasoning, the court in *Scorpion*

also held that, as applied to a redemption of property subject to a tax deed, § 1322(b)(2) allowed

the redemption amount to be paid in full over the length of a chapter 13 plan and was not limited by

§ 108(b).   *Scorpion*, 489 B.R. at 269-70 (citations omitted).

---

their plan to pay the amount stated in WCR Project's proof of claim.   Therefore, the Court will treat the amended
plan, in this context, as if it had been filed on the date that the original plan had been filed, August 8, 2017, and thus
within the extended window provided by § 108(b).

In the instant case, the Debtor's proposed plan is an extension plan, filed prior to the date the Right of Redemption would have expired under the extension provided by § 108(b). The Debtor proposes to pay Redemption Amount in full, plus interest. Therefore, the Debtor has timely exercised her Right of Redemption within the extension granted by § 108(b) by filing an extension plan proposing to pay the Redemption Amount in full. Because the Right of Redemption has been properly exercised by the Debtor by the affirmative step of filing the Plan,[20] and that WCR Project's secured claim is not secured by the Debtor's principal residence, WCR Project's claim can modified by § 1322(b)(2) to be paid over the length of the Plan. Thus, the Court gives full effect to both §§ 108(b) and 1322(b)(2).

## CONCLUSION

On the Petition Date, the Debtor possessed an unexpired Right of Redemption and the rights to use, possession, and all other rights in the Property except for legal title. Therefore, the Property is property of the Debtor's bankruptcy estate. WCR Project has a right to payment of the Redemption Amount, or the equitable remedy of the Debtor forfeiting all remaining rights in the Property to WCR Project, and therefore it holds a claim for the Redemption Amount in this case as defined by § 101(5), secured by the Property. Indeed, WCR Project has admitted this fact by the

---

[20] As referenced in *Jimerson*, "the Eleventh Circuit held that a debtor must take 'certain affirmative steps to change the otherwise dormant right to redeem . . . into a meaningful ownership interest.'" *Jimerson*, 564 B.R. at 436 n. 18 (quoting *In re Lewis*, 137 F.3d 1280, 1284 (11th Cir. 1998)). The court in *Lewis* did not specifically articulate what those "certain affirmative steps" might encompass, but in finding that the debtor did not take those affirmative steps, it is worth noting that the debtor in *Lewis* was not proposing to pay the redemption amount in full, but was only proposing a 62% payout, and did not explicitly reference exercising a right of redemption. *Lewis*, 137 F.3d at 1284. *Jimerson* appears to be the only court since *Lewis* to specifically address what might constitute acceptable affirmative steps, holding that filing a plan that proposes to pay the redemption amount in full with interest does constitute a sufficient affirmative step. *Jimerson*, 564 B.R. at 437 n. 18, & 442; *Scorpion*, 489 B.R. at 267; *Moore*, 448 B.R. at 101-02; *see also In re Terry*, 505 B.R. 660, 663-64 n.1 (Bankr. E.D.Pa. 2014); *Frazer*, 377 B.R. 621; *Pittman*, 549 B.R. 614; *McKinney*, 341 B.R. 892.

filing of its proof of claim.   The value of the Property exceeds WCR Project's claim.   Therefore, WCR Project's claim is fully secured pursuant to § 506.   The Property is not the principal residence of the Debtor.   Redeeming the Property through the Plan is permitted because § 108(b) is a general application provision, superseded by § 1322(b)(2) for cases filed for relief under chapter 13.   Further, the Court finds that §§ 108(b) and 1322(b)(2) can be interpreted without conflict, because the Debtor exercised her Right of Redemption within the extension of § 108(b) by taking the affirmative step of proposing an extension plan to pay WCR Project in full, and therefore is not an expansion of the Debtor's state-law determined rights.   The Redemption Amount can be paid over time, pursuant to § 1322(b)(2), as proposed in the Plan, because the Property is not the principal residence of the Debtor.   Alternately, because § 1322 is a specific-application statute and § 108 is a general-application statute, § 1322(b)(2) applies and permits this modification of WCR Project's rights to allow the Debtor to pay the Redemption Amount as proposed in the Plan.

Accordingly, it is

**ORDERED** that the Objection filed by WCR Project, LLC is **OVERRULED**.

The Clerk is directed to serve copies of this Order upon all scheduled creditors and the attached distribution list.

**[END OF ORDER]**

18

**DISTRIBUTION LIST**

Nechanta Denise Alexander
5816 Wind Gate Lane
Lithonia, Georgia 30058

Peter John Batalon
The Semrad Law Firm, LLC
303 Perimeter Center North
Suite 201
Atlanta, Georgia 30346

Huixin Hou
The Semrad Law Firm, LLC
303 Perimeter Center North
Suite 201
Atlanta, Georgia 30346

Michael John Chase McCallum
The Semrad Law Firm, LLC
303 Perimeter Center North
Suite 201
Atlanta, Georgia 30346

WCR Project, LLC
c/o James P. Blum, Jr.
The Law Office of James P. Blum, Jr., LLC
3000 Langford Road
Building 100
Peachtree Corners, Georgia 30071

Albert Clark Guthrie
Mary Ida Townsend, Chapter 13 Trustee
191 Peachtree Street NE
Suite 2200
Atlanta, Georgia 30303

Guy G. Gebhardt
Acting United States Trustee
75 Ted Turner Drive SW
Suite 362
Atlanta, Georgia 30303